IN THE UNITED STATES DISTRICT COURT IN THE
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CODY CARRAWAY and FOLEY PRO-FESSIONAL FIRE FIGHTERS' AS-SOCIATION, INTERNATIONAL AS-SOCIATION OF FIRE FIGHTERS LOCAL 4772, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FOLEY, ALABAMA and FIRE CHIEF JOEY DARBY in his in-dividual and official capacities, <br><br> Defendants. | CIVIL ACTION NO 1:26-cv-00146 |

## **COMPLAINT**

Plaintiff Cody Carraway is a Lieutenant for the Fire Department of the City of Foley ("the Department") and the President of a labor organization that represents employees of the Department, Foley Professional Firefighters' Association, International Association of Fire Fighters, Local 4772 ("the Union"). In November 2025, President Carraway attempted to tell the Foley City Council about his members' concerns with a pending proposal to add two new ranks to the Department. Though an Alabama statute and the First Amendment to the United States Constitution protect Carraway's right to do so, Fire Chief Joey Darby disciplined Carraway for attempting to speak to Council. According to Chief Darby, President Carraway violated the Department's Chain of Command Policy by failing to receive permission from every link in the Department's chain of command before (1) asking a clerk in City Hall whether

Council meetings were open to the public and (2) discussing the pending proposal with a Councilmember while off duty. Consequently, President Carraway's annual merit salary adjustment was reduced, he is unable to advocate for Union members, fire fighters are afraid to speak to their local legislators about matters affecting the Department, and the public and City Council are deprived of fire fighters' insight into matters of public concern.

President Carraway accordingly brings this action against the City and Chief Darby under 42 U.S.C. section 1983 for violating his First Amendment speech and petition rights and under Alabama Code section 6-6-223 for violating his statutory right to present proposals regarding fire fighters' salaries and terms of employment. The first four counts allege that the City and Chief Darby violated the First Amendment in different ways. Count 1 alleges that the Chain of Command Policy is a facially overbroad restriction on speech activity protected by the First Amendment. Count 2 alleges that Chief Darby unconstitutionally applied the Chain of Command Policy to President Carraway's protected speech and petitioning activity. Count 3 alleges that Chief Darby retaliated against President Carraway for his anticipated speech to City Council.  And Count 4 alleges that the Chain of Command Policy violates Union members' First Amendment right to associate with one another.  Finally, Count 5 alleges that President Carraway is entitled to a judgment under Alabama Code section 6-6-223 declaring that Chief Darby violated President Carraway's to present proposals relative to salaries and other conditions of employment" and to not "be discharged or

discriminated against because of his exercise of such right" under Alabama Code section 11-43-143.

President Carraway brings this action both in his individual capacity and, where indicated, in his representative capacity as President of Foley Professional Firefighters' Association, IAFF Local 4772. Plaintiff Local 4772 brings claims on its own behalf and on behalf of its members who have been chilled from exercising their constitutional rights.

Plaintiffs therefore pray for an order from this court declaring that Chief Darby violated Alabama Code section 11-43-143(b), enjoining enforcement of the unconstitutional policy against any Department employees, directing Chief Darby to remove the discipline from President Carraway's personnel file, and compensating President Carraway for his lost wages and attorneys' fees and costs.

## FACTUAL BACKGROUND

1.      Foley is a city formed under the laws of Alabama. Its legislature, the City Council, consists of Mayor Ralph Hellmich and five elected Councilmembers.

2.      The Fire Department of the City of Foley ("the Department") provides fire protection and prevention services for the City. As Fire Chief, Joey Darby promulgates official City policies for the Department, including the Chain of Command Policy. (A true and accurate copy of the Chain of Command Policy is attached herewith as Exhibit 1).

3.      The Chain of Command Policy provides, "All official communication pertaining to department issues and/or business must follow the Chain of Command."

3

Though "[o]pen door practices allow for general information exchange outside the Chain of Command," the Policy threatens employees who "circumvent" the chain of command with discipline.  And it lists as an example of circumvention, "taking problems or issues directly to the Mayor's office, HR, City Council, etc.; for action without exhausting all levels within the Foley fire department organization structure affording the department the opportunity to resolve the issue."

4.     "Exhausting all levels" within the Department requires an employee to first receive permission from their immediate supervisor to bring an unresolved issue to an officer in the next highest rank. Once they receive permission, the employee may only proceed to the next link "when accompanied by their immediate supervisor." The employee must then repeat this process at each link until the apex, the Director of Public Safety, to exhaust the chain.  The Policy clarifies that "[a]ffiliations do not allow you to bypass" this process.

5.     Cody Carraway is a Lieutenant in the Department and the President of the labor organization representing fire fighters in the Department, Foley Professional Firefighters' Association, International Association of Fire Fighters, Local 4772 ("the Union"). In December 2025, President Carraway was disciplined for ostensibly violating the Policy by asking a clerk in City Hall whether an upcoming City Council meeting was open to the public and by discussing a resolution pending before Council with a Councilmember.

6.     The resolution at issue would alter the rank structure of the Fire Division of the Department. Previously, there had been only three ranks in the Fire

Division—Fire Fighter, Lieutenant, and Captain—with each rank earning an 8% higher base salary than the rank immediately below it. To fill the gap in qualifications and duties between Fire Fighters and Lieutenants, City Council considered a proposal to add two new ranks above Fire Fighter—Advanced Fire Fighter and Driver—with each rank earning an 8% higher base salary than the rank immediately below it. The proposal would not, however, include corresponding salary increases for Lieutenants and Captains.

7.     When the Lieutenants in the Department learned of the proposed resolution in November 2025, they expressed their dissatisfaction in an email chain. Though they supported the new ranks and salary increases, they noted several scenarios in which Advanced Fire Fighters and Drivers could quickly earn more than Lieutenants. Accordingly, they believed that their promotions to Lieutenant penalized them. Some even expressed interest in demoting because they could earn significantly more as Drivers.

8.     Beyond their pecuniary interest in receiving salary increases, the Lieutenants noted that the proposal was unwise from the Department's perspective. Not only did the proposal create "perverse incentives" in which a "Lieutenant could demote, climb the new FF ladder, and then re-promote to make tens of thousands more," but it also "crushed morale and organizational trust" and, consequently, created personnel retention problems. One Lieutenant noted that similar pay structures had been dubbed "pay compression" in compensation studies and that such compression always led to dissatisfaction among supervisors.  Another wrote, "I'm all for the fire fighter

raises – they're long overdue – but I think we need to make sure the officer pay scales stay in line so we don't lose that incentive to promote or take on extra responsibility."

9. Some Lieutenants noted that they had raised their concerns to Chief Darby, but he dismissed them or stated that Drivers and Advanced Fire Fighters were just in the right place at the right time.

10. While off duty, President Carraway raised the Lieutenants' concerns to Councilmember Burkle as well. Because Burkle served as a volunteer fire fighter for 25 years prior to becoming Councilmember, he sometimes communicated with Department employees about matters related to the Department.

11. After some Lieutenants solicited the Union's perspective on the resolution, President Carraway emailed the other Lieutenants that they should "not stay silent on this situation. We have to be vocal, show up, do whatever we need to do, to let them know where we can." Another Lieutenant suggested how to do so: "I would like us to go to the council meeting on Monday[, November 17, 2025,] and voice our opinions in a respectful manner prior to them going to a vote so that they know we are serious."

12. At the time, President Carraway had never attended a City Council meeting before, and he did not know whether the November 17 meeting would be open to public comment. Accordingly, after instructing a CPR class on Thursday, November 13, 2025, President Carraway stopped by City Hall to ask a clerk whether (1) the upcoming City Council meeting was open to the public, and (2) there would be an

opportunity for the public to comment at the meeting. When the clerk answered both questions in the affirmative, President Carraway promptly left City Hall.

13.    Shortly thereafter, President Carraway emailed the other Lieutenants, "I think we need to be there in council meeting Monday. There will be a section of time allotted for comments." In his last email to the group, President Carraway explained what he planned to comment at the meeting: "I think if the council understands the problem they would be willing to do something. Our issue is Chief not communicating to them. I wouldn't want to bash chief in any form but just to inform and educate the council on our problems."

14.    Later that day, the clerk in City Hall informed Mayor Hellmich that President Carraway asked whether the upcoming City Council meeting would be open for public comment, and the Mayor informed Chief Darby. Chief Darby knew that Council was scheduled to vote on the proposed resolution at the November 17 meeting, so he reasoned that President Carraway planned to oppose the resolution for all the reasons the Lieutenants had previously expressed to him.

15.    President Carraway was unable to speak at the Council meeting, however, because on November 15 City Council tabled discussion of the resolution until a later date.

16.    When President Carraway learned that the public portion of the meeting was cancelled, he requested to meet with Chief Darby to explain that he planned to speak at the Council meeting but was not attempting to prevent the proposal from passing. Instead, he intended to explain how the proposal would disincentivize fire

fighters from promoting, hamper morale, and make it harder to retain qualified personnel. He accordingly planned to request that Council implement commensurate salary increases for Lieutenants and Captains (or at least consider doing so in the future) to relieve the pay compression entailed by the proposal. President Carraway also noted that he had expressed these concerns to Councilmember Burkle while off duty.

17.     During the meeting, Chief Darby told President Carraway that the Department was "looking into" whether Carraway violated the Department's Chain of Command Policy. He did not explain how President Carraway potentially violated the Policy.

18.     Roughly two weeks later, on December 1, 2025, City Council passed the rank structure resolution. Resolution No. 25-0569. Neither President Carraway nor any other Union official was able to address Council before it passed the resolution.

19.     On or around December 8, 2025, President Carraway received the results of his annual performance evaluation from his supervising Captain, Reid Cole. While reviewing his evaluation, Captain Cole stated that he lowered President Carraway's score on the "Communication" and "Organizational Structure" sections of the evaluation because Carraway violated the Chain of Command Policy. President Carraway stated that he had never been disciplined for violating the Policy, and he asked Captain Cole how he violated the chain of command.  Because Captain Cole was unsure how President Carraway violated the chain of command, he scheduled a meeting with Carraway and Chief Darby on December 12 to discuss the matter further.

20.     At the meeting on December 12, 2025, Chief Darby handed President Carraway a written record of oral discipline asserting that Carraway violated the Policy "by asking questions about attending a city council meeting and being on the agenda to speak" as well as by speaking "directly with a City Council member regarding his concerns over an item on the Council agenda." Contrary to that record, President Carraway did not ask the clerk in City Hall "questions about . . . being on the agenda to speak." He merely asked whether the general public would be able to comment at the Council meeting.

21.     Captain Cole later showed Carraway how the violation affected his score by removing the violation from the software he used to generate the performance evaluation and recalculating Carraway's score. Once it was removed, President Carraway's overall score rose from three out of five (3/5) to four out of five (4/5).

22.     Because the Department uses employees' scores on their annual performance evaluations to calculate annual merit increases to their salaries, the disciplinary action against President Carraway caused him direct economic harm by lowering his salary. The Department may also consider that discipline in future decisions regarding promotions, demotions, or disciplinary penalties.

23.     Consistent with his constitutional and statutory right to represent the Union's members, President Carraway intends to speak to Council about its pending resolutions affecting the Union and the Department again in the future. He is unable to do so because he cannot even ask for general information about his local government without risking discipline from the Department.

24.    Fire fighters in the Department fear discipline for requesting general information about their local government and for speaking to their elected officials about matters related to the Department. They have accordingly refrained from speaking to Councilmembers or the Mayor about matters of public importance or they will refrain from doing so in the future or both.

## JURISDICTION

25.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because President Carraway's claims arise under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

26.    This Court has subject matter jurisdiction over President Carraway's claim for declaratory relief under 28 U.S.C. § 1367 because the claim is so related to President Carraway's federal claims that they form the same case or controversy under Article III of the United States Constitution.

27.    Venue is proper in this district under 28 U.S.C. § 1191 because Defendants are located within the Southern District of Alabama and the acts giving rise to this action occurred within the Southern District of Alabama.

## STATEMENT OF CLAIMS

### COUNT 1
**42 U.S.C. § 1983 – The Chain of Command Policy is a Facially Overbroad Restriction on First Amendment Speech**
(against the City and Chief Darby in his individual capacity)

28.    President Carraway realleges and incorporates the allegations set forth in paragraphs 1 through 27.

29.     The First and Fourteenth Amendments to the United States Constitution protect public employees' rights to speak as private citizens on matters of public concern. Speech by fire fighters on matters related to their public employment holds special value precisely because fire fighters gain knowledge of matters of public concern through their employment.

30.     Safe and efficient operation of fire departments; fire prevention and response; operational needs of fire departments; ability to retain and attract fire fighters to serve the needs of the community; legislative proposals affecting fire departments; waste, fraud, and abuse; and the terms and conditions of fire fighters' public employment are matters of public concern. Alabama's legislature specifically protects fire fighters' right to speak on the latter topic: the terms and conditions of their public employment. Ala. Code § 11-43-143(b).

31.     By prohibiting "taking problems or issues directly to the Mayor's office, HR, City Council, etc.; for action without exhausting all levels within the Foley Fire Department organizational structure," the Chain of Command Policy prohibits a substantial amount of private employee speech on the safe and efficient operation of fire departments; fire prevention and response; operational needs of fire departments; ability to retain and attract fire fighters to serve the needs of the community; legislative proposals affecting fire departments; waste, fraud, and abuse; and the terms and conditions of fire fighters' public employment. And the Policy specifically prohibits such speech in the forum in which the public deliberates and acts as a *public*: City Council, Foley's legislative authority.

11

32.    By prohibiting fire fighters from "taking problems or issues directly to the Mayor's office, HR, City Council, etc.," the Chain of Command Policy discriminates between speech criticizing the Department, which is prohibited, and speech lauding the Department, which is permitted.  The Policy therefore discriminates based on the viewpoint of the speaker and the content of his speech.

33.    By listing "taking problems or issues directly to the Mayor's office, HR, City Council, etc." as an example of circumventing the chain of command, the Chain of Command Policy tacitly conflates "official communication" with private speech regarding "problems or issues" in the Department.  And by expressly requiring "affiliations" to follow the Chain of Command, the Policy necessarily restricts private speech by Union officials because union advocacy is definitionally outside the scope of fire fighters' public employment.

34.    By requiring fire fighters to receive prior approval and to be physically accompanied by their supervisors through each link in the Chain of Command before "taking problems or issues directly to the Mayor's office, HR, City Council, etc.," the Chain of Command Policy chills a substantial amount of speech protected by the First Amendment. Requiring such physical accompaniment up the chain of command serves no legitimate departmental purpose, dissuades fire fighters from bringing issues up the chain, prevents fire fighters from exhausting the chain of command, and consequently prevents them from speaking to the Mayor's office, HR, or City Council when their obligatory Department escort is unavailable. The Policy functions as a prior restraint because it requires advance permission from supervisors—and physical

accompaniment—before employees may speak to elected officials, regardless of whether the speech occurs on duty or off duty.

35.     By relying on *ad hoc* determinations of what constitutes permissible "general information exchange," as opposed to impermissible "circumvention," the Chain of Command Policy fails to inform fire fighters of what speech is permitted and what speech is prohibited, thereby chilling substantial amounts of speech protected by the First Amendment.

36.     The Chain of Command Policy significantly compromises Department fire fighters' First Amendment speech rights. As a result, the Policy deprives the public and City Council of fire fighters' special insight into the safe and efficient operation of fire departments; fire prevention and response; operational needs of fire departments; legislative proposals affecting fire departments; waste, fraud, and abuse; and the terms and conditions of fire fighters' public employment.

37.     The Chain of Command Policy is accordingly unconstitutionally overbroad.

## COUNT 2
### 42 U.S.C. § 1983 – Unconstitutional Application of the Chain of Command Policy to First Amendment Speech and Petitioning Activity
(President Carraway against the City and Chief Darby in his individual capacity)

38.     President Carraway realleges and incorporates the allegations set forth in paragraphs 1 through 27.

39.     The First Amendment's speech and petition protections include not only the affirmative right to speak and to petition for a redress of grievance but also the right to be free from retaliation from one's public employer for exercising those rights.

40.    Chief Darby violated President Carraway's First Amendment speech and petition rights by disciplining him under the Chain of Command Policy for "asking questions about attending a city council meeting and being on the agenda to speak" and for speaking "directly with a City Council member regarding his concerns over an item on the Council agenda[.]"

41.    Inquiring whether Council meetings are open to the public is not part of President Carraway's ordinary job duties, and he did not do so pursuant to his employment with the Department. Such inquiries are not official communications on behalf of the department but concern the public because the information they elicit—basic information about scheduled legislative meetings—is necessary for citizens to participate in local self-governance, specifically, to communicate with elected legislative representatives about pending legislative proposals.

42.    Discussing pending proposals affecting the Department while off-duty is not part of President Carraway's ordinary job duties either, and he did not do so pursuant to his employment with the Department. Speech concerning the deleterious effects of pending legislative proposals to local legislators is speech and/or petitioning activity protected by the First Amendment.

43.    The Chain of Command Policy was the moving force behind Chief Darby's violation of President Carraway's First Amendment speech and petition rights.

44.    As a direct, foreseeable, and proximate result of Chief Darby's unlawful conduct, President Carraway has suffered and continues to suffer economic injury and

14

other injuries and irreparable harm, including lost income and unwarranted discipline in the Department's personnel file that may be used to make future decisions regarding his employment.

45.    As a direct, foreseeable, and intended result of Chief Darby's unlawful conduct, President Carraway is unable to carry out his responsibilities as President of Local 4772 by advocating for his members, as protected by Alabama law.

46.    Defendants are liable for President Carraway's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT 3
**42 U.S.C. § 1983 – Retaliation in Violation of President Carraway's First and Fourteenth Amendment Rights to Speech and Petition**
(President Carraway against Chief Darby in his individual capacity)

47.    President Carraway realleges and incorporates the allegations set forth in paragraphs 1 through 27.

48.    In the alternative to Count 2, the grounds for discipline articulated by the Department in its record of discipline are pretextual. Chief Darby did not discipline President Carraway for asking a clerk in City Hall whether Council meetings are open to the public and asking to be put on Council's agenda, nor for discussing a pending legislative proposal affecting the Department with a Councilmember. Those acts do not run afoul of the Chain of Command Policy because they are not "official communications" of the Department—the former communication does not even "pertain[] to department issues and/or business[.]"

49.    Chief Darby disciplined President Carraway for the comments he anticipated Carraway making at the Monday, November 17, 2025, City Council meeting.

Based on the comments and criticisms of the proposed rank structure resolution communicated to him by President Carraway and other Lieutenants, as well as President Carraway's account of the comments he planned to make, Chief Darby believed that President Carraway attempted to tell Council that the proposal would be unfair to the acting Lieutenants, harm morale, incentivize Lieutenants to demote, disincentivize fire fighters from seeking promotion, make it more difficult for the Department to retain and recruit employees, create disharmony between ranks, threaten the Department's *esprit de corps*, and ultimately harm the Department's ability to provide fire suppression services to the community. The comments Chief Darby anticipated President Carraway making while off duty at the Council meeting addressed matters of public concern.

50.    Chief Darby disciplined President Carraway because Darby believed President Carraway intended to criticize the proposal and not because of any actual disruption to Department operations caused by President Carraway's comments.

51.    At the time of the discipline, a reasonable Fire Chief would have known that disciplining President Carraway for attempting to discuss a pending legislative proposal affecting his workplace at a public meeting before his elected legislative representatives while off duty violated President Carraway's constitutional rights to speech and petition.

52.    As a direct, foreseeable, and proximate result of Chief Darby's unlawful conduct, President Carraway has suffered and continues to suffer economic injury and other injuries and irreparable harm, including lost income and unwarranted discipline

in the Department's personnel file which may be used to make future decisions regarding his employment.

53.     As a direct, foreseeable, and intended result of Chief Darby's unlawful conduct, President Carraway is unable to carry out his responsibilities as President of Local 4772 by advocating for his members.

54.     Chief Darby is liable for President Carraway's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT 4
### 42 U.S.C. § 1983 – Violation of Union Members' First Amendment Right to Expressive Association
(the Union and President Carraway against the City and Chief Darby in his individual capacity)

55.     Plaintiffs reallege and incorporates the allegations set forth in paragraphs 1 through 27.

56.     The purpose of the Union is to improve the terms and conditions of employment of fire fighters in the Department.

57.     The First Amendment protects the right of fire fighters employed by the Department to associate with the Union without retaliation.

58.     By expressly requiring "affiliations" to follow the Chain of Command, the Chain of Command Policy violates Department fire fighters' right to associate with the Union by threatening discipline against employees who further the Union's expressive purpose by speaking about "problems or issues" in the Department without exhausting the Chain of Command.

59.    President Carraway has refrained from and continues to refrain from "taking problems or issues" in the Department—including proposals relative to salaries and other terms and conditions of employment in the Department—to City Council because he reasonably fears discipline from the Department.  As a result of the Policy, Union members have refrained from associating with one another for the purpose of advocating before City Council on matters affecting their employment, thereby undermining the Union's expressive purpose.

60.    Because Union officers are unable to advocate for the terms and conditions of employment of its members without discipline, members are unable to associate with another to improve the terms and conditions of employment in the Department.

**COUNT 5**
**Alabama Code § 6-6-223 - Declaratory Judgment**

61.    Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 27.

62.    Alabama Code section 6-6-222 empowers courts to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." And Alabama Code section 6-6-223 empowers "any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise" to "have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

63.    Alabama Code section 11-43-143(b) affords fire fighters "the right to present proposals relative to salaries and other conditions of employment by representatives of their own choosing" and to be free from discrimination for exercising such right.

64.    In November 17, 2025, President Carraway engaged in protected conduct under that statute by attempting to communicate members' concerns regarding the pending rank structure resolution—including that the proposal would disincentivize fire fighters from seeking promotion, make it more difficult for the Department to retain and recruit employees, create disharmony between ranks, and threaten the Department's *esprit de corps*—and to propose salary increases for Captains and Lieutenants.

65.    Chief Darby violated President Carraway's rights to present proposals regarding the terms and conditions of his employment in his capacity as the representative of Department firefighters and to be free from retaliation for doing so under Alabama Code section 11-43-143(b) by disciplining President Carraway for attempting to comment in his capacity as the Union's president on a pending legislative proposal regarding the terms and conditions of his employment and to propose salary increases for Lieutenants and Captains.

66.    President Carraway is entitled to a judgment declaring that Chief Darby violated his right to present proposals regarding salaries and the terms and conditions of his employment and to be free from retaliation for doing so under Alabama Code section 11-43-143 by disciplining President Carraway for attempting to

comment on a proposal regarding the terms and conditions of his employment and to propose salary increases for Lieutenants and Captains to City Council.

## PRAYER FOR RELIEF

Accordingly, President Carraway requests that this Court enter an order awarding the following relief:

A.      Declaring that Defendants unlawfully violated President Carraway's and Union members' First and Fourteenth Amendment speech and petition rights,

B.      Declaring that Chief Darby violated President Carraway's rights to present proposals regarding the terms and conditions of his employment and to be free from retaliation for doing so under Alabama Code section 11-43-143 by disciplining President Carraway for attempting to comment on a proposal regarding the terms and conditions of his employment and attempting to propose salary increases for Lieutenants and Captains to City Council,

C.      Enjoining enforcement of the Chain of Command Policy against any Department employees,

D.      Ordering Defendants to remove President Carraway's discipline from his personnel file,

E.      Ordering Defendants to restore President Carraway to the salary he would receive but for Defendants' constitutional violations,

F.      Awarding President Carraway compensatory damages for lost wages resulting from Defendants' constitutional violations,

G.      Awarding President Carraway's attorneys' fees and costs, and

20

H.    Awarding President Carraway any other relief to which he is entitled

and which this Court deems necessary and proper.

A jury trial is demanded for all claims triable by jury.

Respectfully submitted,

/s/*Richard P. Rouco*
Richard P. Rouco
/s/ *George N. Davies*
George N. Davies
QUINN, CONNOR, WEAVER,
  DAVIES and ROUCO, LLP
Two North Twentieth Street
2 – 20th Street North, Ste. 930
Birmingham, AL  35205
Phone: (205) 870-9989
rrouco@qcwdr.com
gdavies@qcwdr.com

/s/*Clark Gebhart*
Clark Gebhart
(*Motion for Admission Pro Hac Vice  to Follow*)
/s/*Brian Petruska*
(*Motion for Admission Pro Hac Vice to Follow*)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 I Street NW, Suite 700
Washington, D.C. 20006
Phone: (720) 441-7838
cgebhart@mooneygreen.com
*Counsel for Plaintiffs*

21